### The UNITED STATES

v.

### James BEROS, Titus McCue a/k/a Tim McCune.

### Appeal of James M. BEROS.

### No. 86-3766.

United States Court of Appeals, Third Circuit.

Argued July 13, 1987.

Decided Nov. 10, 1987.

Dennis J. Clark (argued), Livingston and Clark, Pittsburgh, Pa., for appellant.

Paul J. Brysh, Constance M. Bowden (argued), Asst. U.S. Attys., Pittsburgh, Pa., for appellee.

Before HIGGINBOTHAM, BECKER and HUNTER, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

On this appeal from a final judgment of conviction and sentence, the appellant presents four grounds for this Court's review. He argues first, that the district court erred by failing properly to instruct the jury regarding the required unanimity of its verdict; second, that the district court abused its discretion by admitting a sworn statement previously made by appellant on an application for a marriage license, falsely stating that his marital status was single; third, that the district court erred by restricting appellant's opportunity to cross-examine an adverse witness; and, finally, that the district court erred by imposing an unconstitutional condition of probation specifically prohibiting appellant from serving as a labor union official during the term of probation.

We have reviewed each of appellant's contentions, and find only the first of the enumerated claims to be meritorious. Specifically, we hold that the district court erred with regard to Counts 3 and 5 of the indictment, by failing to give a sufficiently precise instruction to the jury to assure that it understood the requisites of unanimity of its decision and rendered a verdict in compliance therewith. Accordingly, we will vacate the convictions as to those counts, and the appellant's sentence, and remand this matter to the district court for resentencing on the remaining counts.

### I.

Appellant James M. Beros, an officer of the Teamsters Joint Council 40 and a trustee of the Western Pennsylvania Teamsters and Employees Pension Fund ("Pension Fund"), was indicted on a sixteen count indictment. In its several counts, the indictment alleged that on separate occasions Beros was guilty of "embezzling, stealing, abstracting or converting to his own use" funds of the Teamsters Joint Council 40 and of the Pension Fund, in violation of 29 U.S.C. § 501(c) (1982) and 18 U.S.C. § 664 (1982),[1] and that Beros was guilty of conspiring with another person to commit those offenses.

Beros was tried by jury and convicted on seven of the charged counts.[2] He was fined $20,000 and was placed on probation for a period of five years. On appeal, Beros challenges these convictions and sentences. We note jurisdiction to review his claims pursuant to 28 U.S.C. § 1291 (1982).

### II.

At the conclusion of the government's case, Beros unsuccessfully moved for ac-

---

1. In pertinent part, section 501(c) provides that
   [a]ny person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.
   29 U.S.C. § 501(c) (1982). Similarly, section 664 provides that
   [a]ny person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension ben-

efit plan, or of any fund connected therewith, shall be fined not more than $10,000, or imprisoned not more than five years, or both. 18 U.S.C. § 664 (1982).

2. Beros was convicted on Counts 3, 5, 6, 8, 11 and 14 of the indictment. Each of these counts alleged that Beros had embezzled, otherwise misappropriated or misused union funds. As to the remaining charges, Beros was acquitted on Counts 1, 2, 15 and 16, which made similar allegations of misappropriation of funds and misrepresentation of expenses. Counts 4, 7, 12, 13 and 15, which alleged embezzlement, false representation and conspiracy to embezzle, resulted in jury verdicts of not guilty. On Count 10, which alleged embezzlement, a mistrial was declared.

quittal on Counts 3 and 5 of the indictment, arguing that the government's evidence as to those counts was insufficient to support a conviction. Alternatively, Beros argued that if those counts were to be submitted to the jury, the district court should administer specific jury instructions regarding unanimity.[3] Beros asserted that because Counts 3 and 5 each alleged several theories of culpability and also enumerated several distinct occurrences, any of which could support a conviction, the jury should be instructed that it must unanimously agree upon a particular theory of criminality, and also unanimously agree upon the specific transaction that it believed supported Beros's guilt under that theory. *See* Appellant's Appendix ("Appellant's App.") at 33a–35a. The district court granted Beros's request regarding the first aspect of unanimity but determined that a specific instruction regarding unanimity on the particular act was unnecessary. We find that this decision was in error. Given the range of possibilities by which the jury could have reached its verdict, and the possibility that individual jurors reasonably could have disagreed as to which act supported guilt, it was necessary that the district court in this case clearly instruct the jury regarding the required unanimity of its verdict.

It is apparent to us, in light of the allegations made, and the evidence presented to support them, that a significant potential existed for the jury to misunderstand its obligation. Count 3 of the indictment charged that,

[o]n or about December 13, 1981 and continuing to on or about January 26, 1982, in the Western District of Pennsyl-

vania, the defendant James M. Beros, did willfully and unlawfully embezzle, steal, abstract and convert to his own use the monies, funds, property and other assets of Joint Council 40, to wit, the approximate sum of $1,063.00, expenses incurred by James M. Beros for a plane ticket in the name of Mrs. C. Beros, for a flight to Ft. Lauderdale, Florida and lodging in Hollywood, Florida. In violation of Title 29, United States Code, Section 501(c).

Appellant's App. at 7a. In support of this allegation, the government presented evidence to prove that Beros had unreasonably expended union funds while serving as President of Joint Council 40 and trustee of the Pension Fund. The evidence showed that in this capacity, Beros and his wife had traveled to Florida, ostensibly to attend a union conference. In connection with the trip, he (1) used a Joint Council credit card to pay airfare for himself and his wife; (2) occupied a hotel suite that cost $160 per day, rather than a single or double room which would have cost no more than $60 per day; and (3) remained in Florida for personal reasons after the conclusion of the conference, but continued to expend union funds.

Count 5 made similar allegations with regard to a separate incident.

On or about November 26, 1982 and continuing to on or about January 24, 1983, in the Western District of Pennsylvania, the defendant, James M. Beros, did willfully and unlawfully embezzle, steal, abstract and convert to his own use the monies, funds, property and other assets of the Pension Fund, to wit, the approximate sum of $765.87, a cash advance drawn upon the Pension Fund by James

---

**3.** A preliminary matter is raised by the government concerning the proper standard of our review of Beros's claim concerning the unanimity instruction. *See* Appellee Brief at 3, 16. The government argues that the objection that Beros raised regarding the jury instructions was insufficient, and asserts therefore that this Court should review the district court's decision under the "plain error" standard, rather than for an "abuse of discretion."

We note that review under the more deferential "plain error" standard is appropriate in cases where no objection to jury instructions is made, *see Henderson v. Kibbe*, 431 U.S. 145, 97

S.Ct. 1730, 52 L.Ed.2d 203 (1977), or where no alternative jury instructions are proposed. *See, e.g., United States v. Payseno*, 782 F.2d 832 (9th Cir.1986). We find in this case, however, that the record clearly enough demonstrates that a sufficient objection was made by Beros to preserve this issue for appeal. *See* Appellant's Appendix at 33a, 124a–25a. We therefore determine that the appropriate standard for our review is "abuse of discretion." *United States v. Fischbach & Moore, Inc.*, 750 F.2d 1183 (3d Cir.1984), *cert. denied*, 470 U.S. 1029, 105 S.Ct. 1397, 84 L.Ed.2d 785 (1985).

M. Beros on or about November 26, 1982 for a trip to Orlando, Florida and expenses incurred by James M. Beros for lodging, food, and rental car in Orlando, Florida. In violation of Title 18, United States Code, Section 664.

Appellant's App. at 9a. As to this count, the government offered evidence that on the dates specified, Beros traveled to Florida on behalf of the union for the purpose of attending a conference. Prior to leaving, Beros apparently obtained an advance from the Pension Fund in the amount of $1,000. The evidence indicated (1) that Beros failed to report this advance until May 23, 1984; (2) that when he reported having taken the advance, he was unable to account for $160; (3) that one of the listed expense items represented airfare that had previously been reimbursed by the Pension Fund; and (4) that the Pension Fund paid Beros $399.27 for expenses that he incurred during two days he and his wife spent in Florida after the conclusion of the conference, during which time no union business was conducted.[4]

The district court noted that any one of the acts alleged in these counts could provide the basis for a conviction under the statutes, and appears to have recognized the necessity that the jury's verdict be unanimous not only as to its finding that Beros violated the statutes but also as to the particular act or acts by which he did so. In its charge to the jury, however, the district court failed to instruct the jury properly regarding this last aspect of unanimity.

With regard to Count 3, the district court instructed the jury that:

> counts 3, 6, 8 and 10 of the indictment charge the defendant with willfully and unlawfully embezzling, stealing, abstracting and converting to his own use the moneys, funds, assets and other property of the Teamsters Joint Council 40. In addition you will note that in some of these counts the government contends the defendant violated Section 501(c) in more than one manner. However, Section 501(c) is worded in the disjunctive, that is, a defendant may be guilty of an offense if he embezzled, stole, abstracted, or converted to his own use the moneys, funds, property or assets of a labor organization. Therefore, if you find beyond a reasonable doubt that one method, mode, or manner of violating the law occurred, that is sufficient to find the defendant guilty so long as you agree unanimously upon the particular method, mode or manner that occurred.

Appellant's App. at 102a–103a. Similarly, with regard to Count 5, the district court instructed the jury that

> [i]n each of Counts 4, 5, 7, 9, 11 and 13, the defendant James M. Beros is charged with, on various dates, willfully and unlawfully embezzling, stealing, abstracting and converting to his own use or the use of another the moneys, funds, property and other assets of the Western Pennsylvania Teamsters and Employers Pension Fund, which I will refer to as the pension fund, or the Western Pennsylvania Teamsters and Motor Carriers Welfare Fund, which I will refer to as the welfare fund, in violation of Title 18, United States Code Section 664.

> . . . . .

> Again, you will note that in each of Counts 4, 5, 7, 9, 11 and 13, that the

---

**4.** We assume arguendo that Beros's act of staying in a suite rather than in a single room is the type of act sufficient to support a finding that he violated § 664. We feel obliged, however, to note our qualms about the government's pursuit of criminal indictments on such relatively insignificant allegations as the propriety of a union official's spending $160 rather than $60 on a hotel room. Although theft or other misappropriation of union funds, regardless of amount, is a legitimate and important governmental concern, it seems to us more appropriate for a union's membership, rather than a federal court, to determine how "first class" union leaders will travel. In our view, the government misperceives the purposes for which these statutes were enacted when it prosecutes a union leader for purchasing first class airfare rather than an excursion ticket, or, as in the present case, for not obtaining the least expensive hotel accommodation. If this type of picayune prosecution is encouraged, then we must expect that indictments for tipping five dollars in circumstances where two dollars would suffice cannot be far behind.

government charges that the defendant embezzled, stole, abstracted and converted the moneys and properties of the fund in question, and that in some of these counts the government contends that the defendant violated Section 664 in more than one manner. Because Section 664 is worded in the disjunctive, that is, a defendant may be guilty of an offense if he embezzled, stole, abstracted or converted to his own use or the use of another the money, funds, property or assets of an employee pension or welfare plan. If you find beyond a reasonable doubt that any one method, mode or manner of violating the law occurred, that is sufficient to find the defendant guilty so long as you agree unanimously upon the particular method, mode or manner that occurred.

Appellant's App. at 105a, 108a. Although by these instructions the district court gave specific guidance to the jury regarding the necessity that it be unanimous with regard to the "mode or manner" by which it found the defendant to be guilty of the charged offenses, in neither instance did it clearly instruct the jury that it must also unanimously agree upon the particular act or acts of criminality.

■ In the routine case, a general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction, even where an indictment alleges numerous factual bases for criminal liability. *See United States v. Schiff*, 801 F.2d 108 (2d Cir.1986) *cert. denied*, —— U.S. ——, 107 S.Ct. 1603 (1987); *United States v. Frazin*, 780 F.2d 1461, 94 L.Ed.2d 789 (9th Cir.) *cert. denied*, —— U.S. ——, 107 S.Ct. 158, 93 L.Ed.2d 98 (1986); *United States v. Murray*, 618 F.2d 892 (2d Cir. 1980). This rule is inapplicable, however, where the complexity of the case, or other factors, creates the potential that the jury will be confused. *See United States v. Payseno*, 782 F.2d 832 (9th Cir.1986). *Cf. United States v. Ryan*, 828 F.2d 1010 (3d Cir.1987) (noting that "in any case where a count will be submitted to the jury on alternative theories, prudence counsels the trial court to give an augmented unanimity instruction if the defendant requests such a

charge" *id.* at 1020). The case before us presents such an instance of complexity, and for that reason the general unanimity instruction given was insufficient.

We are persuaded by the analysis and rationale of the Court of Appeals for the Fifth Circuit in *United States v. Gipson*, 553 F.2d 453 (5th Cir.1977). In *Gipson*, the appellant challenged his conviction under 18 U.S.C. § 2313 (1982) (originally enacted as Act of June 25, 1948, ch. 645, 62 Stat. 806). That statute specifically prohibits receiving, concealing, storing, harboring, selling and disposing of stolen vehicles moving in interstate commerce. The appellant argued that his conviction should be reversed because the jury had not been properly instructed that it must be unanimous as to which particular theory or theories upon which it based its guilty verdict.

That appellate court framed the question presented as follows:

> Where a single criminal statute prohibits a number of acts, and a finding by the jury that the defendant did any one of the prohibited acts is sufficient to convict him[,] ... is the defendant's right to a unanimous verdict infringed if a guilty verdict is returned when all members of the jury agree that the defendant performed one of the prohibited acts but disagree as to which of the acts he performed?

553 F.2d at 456–57. *Gipson* recognized that "[t]he unanimity rule ... requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged." *Id.* at 457–58.

■ The issue presented by our case differs from *Gipson* in that our focus is not upon an instruction regarding unanimity on the charged theories, but rather upon an instruction regarding unanimity on the acts which are predicate to a finding on those theories. The concern, however, is the same. In our case, each of the charged statutes prohibits several acts. Counts 3 and 5 each allege several transactions or occurrences, any of which could constitute

one of the acts proscribed by the charged statutes. Surely, just as the sixth amendment requires jury unanimity in federal criminal cases on each delineated offense that it finds a defendant culpable, *see Johnson v. Louisiana,* 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972) (Powell, J. concurring), it must also require unanimity regarding the specific act or acts which constitutes that offense. Absent such certainty, the unanimity requirement would provide too little protection in too many instances.

The government attempts to distinguish *Gipson* from the present case by noting that, in *Gipson,* the district court had given a specific but incorrect instruction regarding unanimity. It was only for that reason, the government asserts, that reversal of the appellant's conviction was warranted. In this case, since no such mistaken instruction was given, the government argues that the rationale of *Gipson* is inapplicable.

This argument misreads *Gipson.* The court's analysis regarding juror unanimity did not rest solely upon the fact that the district court erroneously instructed the jury. Rather, the principal problem was the possibility that the jury was confused or mistaken regarding its obligation. In *Gipson,* that possibility was plainly evident in light of the district court's mistaken instruction, but that fact does not leave the analysis without application to the present case. Indeed, were we only to consider such challenges to jury instructions where it was absolutely clear that the jury was improperly instructed, a wide range of valid claims would be left without redress. Our task is to determine, in light of the allegations made and the statute charged, whether *the potential* for juror confusion existed. We need not, and indeed probably could not in each case, satisfy ourselves that the jury was *in fact* confused. As the Court of Appeals for the Ninth Circuit noted in *United States v. Echeverry,* 698 F.2d 375, *modified,* 719 F.2d 974 (9th Cir.1983) (en banc), "[w]e are not free to hypothesize whether the jury indeed agreed to and was clear on the" transaction or theory by which it found Beros guilty. 698 F.2d at

377. Rather, we adhere to the simpler, and constitutionally more correct rule:

> When it appears ... that there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts, the general unanimity instruction does not suffice.

> To correct any potential confusion in such a case, the trial judge *must augment the general instruction to ensure the jury understands its duty to unanimously agree to a particular set of facts.*

719 F.2d at 975 (emphasis supplied); *accord Payseno,* 782 F.2d at 837; *United States v. Mastelotto,* 717 F.2d 1238 (9th Cir.1983).

In substance, the analytical problem presented by this case is whether the district court's use of the phrase "method, mode or manner" of violating the law provided sufficiently specific guidance to assure that, in fact, all members of the jury were unanimous on the same act or acts of illegality. Counts 3 and 5 each allege four separate and distinct theories of criminal activity: embezzlement, abstraction, stealing and conversion. Each count also enumerates several acts upon which a finding of guilt could be predicated. It is plainly not enough that the jury was unanimous in finding one theory on which it believed Beros culpable. The jury needed also to match that finding to another unanimous finding regarding a particular act.

The following hypothetical as to Count 3 may help to illustrate the problem we perceive. That Count alleged three *separate* transactions of Beros's criminal conduct: (1) the use of a Joint Council credit card to pay air fare for himself and his wife; (2) occupying a hotel suite that cost $160.00 per day rather than a single or double room which would cost no more than $60.00 per day; and (3) remaining in Florida for a couple of additional days for personal reasons after the conclusion of the conference. We can easily imagine that only four jurors thought that the first act (the improper use of the Joint Council credit card) constituted

criminal behavior, that four other jurors believed that act two (occupying a suite rather than a single room), constituted the criminal act, and that the final four jurors believed that the third act (Beros's remaining in Florida for personal reasons for a couple days after the conference) provided the basis for conviction. In this scenario, the jury would unanimously conclude that there was a mode or manner of violating the law, but there would be no unanimity as to the predicate act. Also, under such a scenario, any verdict would be defective because of the lack of real unanimity.

■ When the government chooses to prosecute under an indictment advancing multiple theories, it must prove beyond a reasonable doubt at least one of the theories to the satisfaction of the entire jury. It cannot rely on a composite theory of guilt, producing twelve jurors who unanimously thought the defendant was guilty but who were not unanimous in their assessment of which act supported the verdict. Conviction by a jury that was not unanimous as to the defendant's specific illegal action is no more justifiable than is a conviction by a jury that is not unanimous on the specific count. In this case, the permutations that can support a valid conviction are varied and several. What may not vary, however, is the required unanimity of each aspect of the jury's finding. We are convinced that the sixth amendment requires such unanimity, and we must be certain that the jury was properly instructed to achieve it. *United States v. Peterson,* 768 F.2d 64, 67 (2d Cir.), *cert. denied,* 474 U.S. 923, 106 S.Ct. 257, 88 L.Ed.2d 264 (1985). We conclude that the circumstances of this case, similar to those of *Gipson,* warranted more specific instructions regarding jury unanimity.

The government's reliance on *Schiff, Frazin, United States v. Wright,* 742 F.2d 1215 (9th Cir.1984), and *United States v. Ferris,* 719 F.2d 1405 (9th Cir.1983), for the proposition that there are no special circumstances in this case requiring a more explicit instruction with respect to unanimity, is misplaced. Each of those decisions involved counts in which only one act was

specified, an act that the government alleged supported guilt on several theories. *See Schiff,* 801 F.2d at 109; *Frazin,* 780 F.2d at 1468; *Wright,* 742 F.2d at 1217; *Ferris,* 719 F.2d at 1407. In our case, *each* of the counts alleged several distinct acts, any of which might have provided the basis for a guilty verdict on several distinct theories. *Cf. United States v. Mangieri,* 694 F.2d 1270 (D.C.Cir.1982) (where one charge encompasses separate acts it is desirable that the judge, without request, employ an instruction that their verdict be unanimous as to the act they find the defendant guilty).

The appeal before us is also distinguishable from other appellate court decisions to which the government cites for the proposition that a general unanimity instruction is sufficient in cases where several criminal acts have been alleged. *See, e.g., Peterson; United States v. Williams,* 737 F.2d 594 (7th Cir.1984), *cert. denied,* 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985); *United States v. McClure,* 734 F.2d 484 (10th Cir.1984); *United States v. Pavloski,* 574 F.2d 933 (7th Cir.1978); *United States v. Natelli,* 527 F.2d 311 (2d Cir.), *cert. denied,* 425 U.S. 934, 96 S.Ct. 1663, 48 L.Ed.2d 175 (1975). Each of these decisions involved review under the *plain error* standard since defense counsel had neither objected to the trial court's jury charge, nor requested specific instructions. *See Peterson,* 768 F.2d at 68; *Williams,* 737 F.2d at 613; *Pavloski,* 574 F.2d at 936. The standard of review here is different, and the conclusions reached in those decisions are not easily comparable to our own. In *Mangieri,* for example, the court noted that

> [b]ecause of the possibility of a nonunanimous verdict, when one charge encompasses two separate incidents, the judge must instruct the jury that if a guilty verdict is returned the jurors must be unanimous as to which indictment or incidents they find the defendant guilty.

694 F.2d at 1281 (*quoting Hack v. United States,* 445 A.2d 634, 641 (D.C.Ct.App. 1982)). The court, however, did not reverse the appellant's conviction because it could not conclude "that it was plain error not to

give the more particularized instruction in this case." 694 F.2d at 1281.

It is unnecessary, however, for us to reach the question of whether the failure to give a specific unanimity instruction in such a case constitutes reversible error. As we noted above, Beros sufficiently preserved this issue for our review. Therefore, the standard by which we consider whether the district court committed error is "abuse of discretion." Under this test, we review the district court's instruction in order to "determine whether the charge, taken as a whole and viewed in the light of the evidence, fairly and adequately submits the issues in the case to the jury" without confusing or misleading them. *United States v. Fischbach & Moore*, 750 F.2d at 1195 (citations omitted). Pursuant to this standard, we conclude that the district court committed reversible error by not acceding to defense counsel's request for specific instructions. Because there is a significant possibility that this error may have resulted in a non-unanimous verdict in violation of the sixth amendment, the district court's instructions were not harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

### III.

The remainder of Beros's contentions are unpersuasive. He next argues that the district court abused its discretion by allowing cross-examination of himself and other defense witnesses regarding a false statement previously made by Beros to a sworn statement. The statement in question was made in May 1981, when Beros, who was in fact married, lied about his marital status on a Nevada marriage license, and thereby attested that he was legally competent to marry Christine Molitoris, with whom he had had an affair and who had accompanied him on several of the trips named in the indictment. Beros sought to have this evidence excluded from his trial. He argued that it was unduly prejudicial because it was inflammatory and because its use was calculated to arouse moral indignation by demonstrating that he had attempted to commit bigamy.[5] The district court denied Beros's motion and allowed the government to use evidence of this false statement to impeach Beros's character in its cross-examination of him and to examine his character witnesses regarding their knowledge of the incident.

■ The propriety of the district court's exercise of discretion in this matter is too evident to merit much discussion. The Federal Rules of Evidence clearly provide that evidence regarding specific instances of conduct relevant to a defendant's character is permissible on cross-examination where the defendant has put his or her character in question by his or her testimony or through that of a witness presented by the defendant, or where the issue of his credibility is an essential element of the charged offense. *See* Federal Rules of Evidence 608(b) and 405(b).[6]

It cannot be disputed that Beros's character and honesty were central issues to his case. Further, when he took the stand,

---

5. There is no indication in the record or in the briefs that the appellant denies the veracity of the accusation.

6. Fed.Rules Evid. 608(b):

*Specific Instances of Conduct*
Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or un-

truthfulness of another witness as to which character the witness being cross-examined has testified.

The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of the accused's or the witness' privilege against self-incrimination when examined with respect to matters which relate only to credibility.

Fed.R.Evid. 405(b):

*Specific Instances of Conduct*
In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct.

he subjected his credibility to scrutiny as do all witnesses. *See United States v. Jackson,* 588 F.2d 1046, 1055 (5th Cir.), *cert. denied,* 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979). The evidence in question was therefore certainly admissible, subject only to a discretionary decision by the district court to exclude it.

Beros correctly notes that a proper limit upon the admission of relevant character evidence is imposed in instances where the probative value of the evidence is outweighed by its prejudicial impact. *See* Fed. R.Evid. 403.[7] This case, however, does not present such an instance.

The evidence in question may well have tended to demonstrate Beros's capacity for untruthfulness, but that is the legitimate purpose for which it was offered. We are aware that the detriment to his credibility that Beros suffered as the result of the admission of this evidence may have been great, given the magnitude of his attempted falsehood. We are unpersuaded, however, that because of this significance the evidence should have been excluded. We agree with the district court that there was no genuine potential for *unfair* prejudice to Beros as the result of the admission of the evidence.

The correctness of our conclusion appears more certain in light of the fact that evidence of Beros's adultery with Molitoris had already been admitted without challenge.[8] Moreover, the district court sufficiently mitigated any potential for unfair prejudicial effect that the evidence might have had, by preventing the government from suggesting in any way that Beros had in fact committed bigamy.[9] Accordingly, we find no abuse of discretion.

### IV.

Beros next contends that the district court erred by refusing to permit cross-examination of Molitoris regarding an alleged improper motive for her direct testimony. The testimony in question concerned a dinner meeting with another union official that Beros alleged had occurred during one of the trips named in the indictment. Presumably, he sought to prove the occurrence of this meeting in order to demonstrate a business-related purpose of his expenses. He asserted that Molitoris was present at that meeting and, accordingly, had knowledge of it.

In her direct testimony, Molitoris stated that she was not sure of whether the dinner meeting had taken place. She testified that she recalled meeting the other official but she stated "I believe we had dinner, but I am not sure anymore." Government's Appendix ("Govt. App.") at 30GA. Beros asserts that Molitoris previously had been certain of the occurrence of the meeting, but did not testify that she was certain because of intimidation by the government. It appears that Molitoris had been cautioned by the government prior to her testimony at trial that if she altered the testimony which she had previously given to the grand jury—in which she made no men-

---

7. Fed.R.Evid. 403:

   *Exclusion of Relevant Evidence of Prejudice, Confusion, or Waste of Time.*

   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

8. The district court noted that,

   [i]f the appellant hasn't been prejudiced by the fact that the evidence indicated [Molitoris] is his mistress, he is certainly not going to be prejudiced by the fact that they may have tried to get married.

   Appellant's App. at 61a.

9. In its instruction to the government's counsel regarding use of the evidence to cross examine one of Beros' character witnesses, the court stated

   This only had to do with his truthfulness. You may show instances of untruthfulness ... but it has nothing to do with law abiding.... You may ask about specific instances of conduct, however, do not phrase it in terms of him being guilty of bigamy because he has never been found guilty of bigamy. If you want to ask him did he know that Beros' name was in a marriage license application at a certain time and at a certain place, you can ask him that. Don't say he is guilty of bigamy.

   Government Appendix at 222GA–23GA.

tion of the meeting—she could be subject to prosecution for perjury.

█ On cross-examination, Beros attempted to elicit testimony from Molitoris regarding that admonition. The government objected to that line of questioning, and the district court sustained the objection. Beros claims that this limitation of his cross-examination constituted a violation of his sixth amendment right to confront a witness against him. We find this contention to be completely without merit.

As a preface to our discussion of this claim, we are compelled to state that we find Beros's assertions somewhat perplexing.[10] The testimony in question did not concern an absolute assertion by the witness that was inconsistent with an earlier statement, but rather reflected only the attempt of an apparently honest witness to give due deference to the frailties of her memory. The district court properly exercised its discretion to limit a cross-examination that otherwise would have likely misled the jury.

█ As we understand it, Beros's argument is that pursuant to the confrontation clause, he was entitled to demonstrate to the jury that the government had admonished its own witness to tell the truth. It is puzzling to us how or why that admonition has any relevance to bias or motivation on the part of the witness which Beros was entitled to demonstrate. Certainly, the "exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right to cross-examination." *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986) (citing *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974)). The district court, however, retains discretion to impose reasonable limits on defense counsel's inquiry

into the potential bias of a government witness where there is a concern about harassment, prejudice, confusion of the issue, the witnesses' safety, or interrogation that is repetitive or only marginally relevant. *See Van Arsdall,* 106 S.Ct. at 1435. "'[T]he Confrontation Clause [of the sixth amendment] ... guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent the defense might wish.'" *Id.* (quoting *Delaware v. Fernsterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) (per curiam)) (emphasis in *Fensterer*).

█ The only possible vitality that we can find in Beros's argument depends upon his ability to demonstrate that the testimony that Molitoris gave at the trial was false, and that her motivation for not recanting that testimony was fear that she would be subject to prosecution for perjury. This argument assumes a great deal. There is no indication in the record, and no demonstration by Beros, that Molitoris was anything other than honest in her testimony. In that regard, we note that an admonition to a witness that she not commit perjury is completely proper and is not threatening to her if she has been truthful. *See United States v. Vecchiarello,* 569 F.2d 656, 659 (D.C.Cir.1977). Further, and most importantly, while it appears to us that the testimony that Molitoris gave regarding the incident in question was not tremendously damaging to Beros, we note that the district court did not inhibit his opportunity to test Molitoris' credibility or her memory regarding the occurrence of the meeting. We conclude, therefore, that the "damaging potential of the cross-examination [was] fully realized," *Van Arsdall,* 106 S.Ct. at 1438, and that no harmful error resulted from the manner by which the district court limited its scope.

10. We presume that since he points only to this specific area of Molitoris' testimony, Beros does not assert that other areas of her testimony were unfairly affected by the government's admonition. We note that Beros was acquitted on each of the counts to which the questioned testimony was directly relevant. Indeed, the only count concerning the Bahamas trip on which he was convicted, Count 14, alleged only

the misuse of union funds for the *airfare* of Molitoris to the Bahamas. For that reason, our initial inclination was not to reach the merits of this issue which appears to us so minimally relevant to any plausible contention that Beros can make. For that reason also, we note that, were we to find any error in the district court's action, it is likely that we would be easily persuaded that it was harmless.

## V.

Beros's final contention is two-fold. He asserts first, that the condition of his probation that prohibited him from (1) holding an elected position in any union; (2) being employed by any union; (3) representing any union; or (4) receiving funds from any union, violated his first amendment right of free association and his fifth amendment right to due process. Second, he argues that 29 U.S.C. § 504 (1982), which prohibits persons convicted of any of the felonies delineated by that statute from engaging in any of the above listed acts, and pursuant to which, it is apparent, the challenged condition of probation was devised, is unconstitutional on its face.

Although we recognize the significant interrelatedness between these two contentions, we find that only the first is properly raised in this forum. We therefore circumscribe our review accordingly.

Section 504 is a criminal statute that specifically proscribes certain activity, and authorizes sanctions against those who violate its provisions.[11] Beros has neither been charged with, nor prosecuted for any violation under that statute, and neither has he demonstrated an imminent likelihood of such prosecution. For these reasons, we find that his challenge to the constitutionality of section 504 is not ripe for our review. "The power of Courts, and ultimately of this Court to pass upon the constitutionality of acts of Congress arises *only* when the interests of litigants require the use of this judicial authority for their protection against *actual* interference." *United Public Workers of Amer. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89–90, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947) (emphasis added); *accord Shoemaker v. Handel*, 795 F.2d 1136 (3d Cir.) (holding that jockeys' constitutional privacy challenge to state regulation permitting urine and breathalizer tests was not ripe for review where regulation had not yet been enforced and proposed amendments addressed to privacy concerns had been adopted) *cert. denied,* —— U.S. ——, 107 S.Ct. 577, 93 L.Ed.2d 580 (1986).

Beros is not left by this holding without recourse to challenge the constitutionality of § 504. Obviously, if he is ever prosecuted under the statute, at that time he will have the opportunity properly to interpose his claim.[12] Additionally, contingent upon his ability to demonstrate standing, he may

---

**11.** In pertinent part, that statute provides that: No person who ... has been convicted of, or served any part of a prison term resulting from his conviction of any felony involving abuse or misuse of such person's position or employment in a labor organization or employee benefit plan to seek or obtain an illegal gain at the expense of the members of the labor organization or the beneficiaries of the employee benefit plan, or conspiracy to commit any such crimes or attempt to commit any such crimes, or a crime in which any of the foregoing crimes is an element, shall serve or be permitted to serve—

  (1) as a consultant or adviser to any labor organization,

  (2) as an officer, director, trustee, member or any executive board or similar governing body, business agent, manager, organizer, employee or representative in any capacity of any labor organization,

  (3) as a labor relations consultant or adviser to a person engaged in an industry or activity affecting commerce, or as an officer, director, agent, or employee of any group or association of employers dealing with any labor organization, or in a position having specific collective bargaining authority or direct responsibility in the area of labor-management relations in any corporation or association engaged in an industry or activity affecting commerce, or

  (4) in a position which entitles its occupant to a share of the proceeds of, or as an officer or executive or administrative employee of, any entity whose activities are in whole or substantial part devoted to providing goods or services to any labor organization, or

  (5) in any capacity, other than in his capacity as a member of such labor organization, that involves decisionmaking authority concerning, or decisionmaking authority over, or custody of, or control of the moneys, funds, assets, or property of any labor organization, during or for the period of thirteen years after such conviction or after the end of such imprisonment, whichever is later ...

29 U.S.C. § 504 (1982).

**12.** We note incident to this discussion that historically there appears to be some prosecutorial discretion in bringing actions under § 504. *See, e.g., United States v. Berrios*, 501 F.2d 1207, 1210 (2d Cir.1974) (challenging application of statute to appellant as unconstitutional selective prosecution and noting that during first 10 years of statute's existence only nine prosecutions occurred).

seek a declaratory judgment as to the constitutionality of the statute.

█ What remains for our consideration then, is only the propriety of the district court's decision to prohibit, as a condition of probation, actions that are otherwise proscribed by law. It is apparent to us that the district court acted well within the parameters of its authority. The Federal Probation Act, 18 U.S.C. § 3651 (1982), *repealed by* Sentencing Reform Amendments Act of 1985, Pub.L. 98–473, Title II, c. II § 212(a)(2), Oct. 12, 1984, 98 Stat. 1987, effective Nov. 1, 1987, pursuant to section 235 of Pub.L. 99–217, § 4, Dec. 26, 1985, 99 Stat. 1728, grants broad discretion to district courts to fashion probation conditions that are reasonably related to the rehabilitation of the offender, and protection of the public. *See Higdon v. United States,* 627 F.2d 893 (9th Cir.1980). Our review for abuse of that discretion requires only that we determine whether the condition imposed is reasonably related to effect a proper purpose. *See id.* at 897; *see also United States v. Stine,* 646 F.2d 839, 842 (3d Cir.1981) (because probation statute permits judges to impose conditions they deem best, these matters are largely committed to the discretion of the trial court).

In this case, the condition of probation imposed was well suited to effect the legitimate governmental purposes of punishing Beros for the offenses charged, and deterring further misconduct. As the Court of Appeals for the Fifth Circuit has noted,

[a] condition of probation satisfies the statute governing probation so long as it is reasonably related to rehabilitation of the probationer, protection of the public against other offenses during its term, deterrence of future misconduct by the probationer or general deterrence of others, condign punishment, or some combination of such objectives.

*United States v. Tonry,* 605 F.2d 144, 148 (5th Cir.1979). The fact that probation conditions restrict a probationer's freedom is not dispositive of their validity under the Federal Probation Act. *See Higdon,* 627 F.2d at 898. Indeed, significant impositions upon an individual's first amendment rights may well be reasonable in light of the offense for which that individual was convicted. *See, e.g., United States v. Barrasso,* 372 F.2d 136, 137 (3d Cir.1967) (imposition of five-year period of probation on union official convicted of illegally obtaining money from employee, which included provision that the official not seek or accept employment by any labor union during probation period, was proper); *cf. Tonry,* 605 F.2d at 150–51 (where probationer was convicted of four violations of Federal Election Campaign Act, it was not inappropriate for probation to be conditioned on probationer not running for political office nor engaging in political activity during the period of probation).

We are satisfied that the district court properly exercised its discretion in establishing the conditions of probation it imposed. We find that the prohibition against Beros, who has been validly convicted of several counts of embezzlement and misuse of union funds, holding elective union office or otherwise obtaining authority to receive or control union funds, is rationally related to the legitimate objectives of furthering the interests of the public while punishing him for his offenses. Accordingly, we will also affirm this aspect of his sentence.

## VI.

For the foregoing reasons, we will vacate the convictions on Counts Three and Five, and affirm the convictions on the remaining counts. We will vacate appellant's sentence and remand to the district court for resentencing on the remaining valid convictions.[13]

---

**13.** On remand, the district court should fashion *de novo,* the sentence that it deems appropriate in light of the charges on which Beros was validly convicted. *See, e.g., United States v.*

*Busic,* 639 F.2d 940 (3rd Cir.), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981) (holding that where convictions on some counts of multi-count indictment vacated, remand for

resentencing on remaining valid counts does not violate double jeopardy, and district court's imposition of a sentence that accords with the statutes on which appellant was validly convicted does not violate the Constitution even if the total length of the sentence imposed on remand is equal to or greater than the sentence original-ly given). The government is of course entitled to retry Beros on Counts 3 and 5 at its discretion, since our vacatur of Beros's conviction on those counts did not result from a finding of insufficient evidence. *See Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984).