OPINION *Page 2 
{¶ 1} Defendant-appellant Kenyan Chandler appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of aggravated robbery. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On February 6, 2007, the Stark County Grand Jury indicted appellant on one count of aggravated robbery in violation of R.C. 2911.01(B), a felony of the first degree, one count of assaulting a police dog or horse in violation of R.C. 2921.321(A)(1), a misdemeanor of the first degree, and one count of resisting arrest in violation of R.C. 2921.33(A), a misdemeanor of the second degree. At his arraignment on March 2, 2007, appellant entered a plea of not guilty to the charges contained in the indictment.
 {¶ 3} Subsequently, a jury trial commenced on April 25, 2007. The following testimony was adduced at trial.
 {¶ 4} The Carousel Bar is located on State Route 62 in Canton, Ohio next to the Wal-Mart Store. On December 24, 2006, Officer Jim Nixon of the Canton Police Department, who was in uniform in a marked cruiser, went to the Carousel Bar at approximately 1:45 a.m. to check on things there. Officer Nixon testified that, prior to Christmas Eve, there had been shots fired outside of the bar and that the night before there had been a stabbing in the bathroom. The officer further testified that he went to the Carousel Bar close to closing time, which was at 2:30 a.m., "just to kind of keep the peace." Transcript at 83. *Page 3 
 {¶ 5} When Office Nixon arrived at the bar, he saw hundreds of people in the parking lot and counted approximately fifty people walking into the bar. According to the officer, the bar was only permitting females to enter and was locking males out of the bar. Officer Nixon testified that he was concerned about a potential fire hazard due to the large number of people and called dispatch to have the Fire Marshall come out.
 {¶ 6} When Officer Charles Saler arrived at the bar to assist Officer Nixon, the two watched the front doors of the bar. At some point in time, Bubba, one of the bar's bouncers, waved the two officers into the bar. According to Officer Nixon, approximately 300 people were in the bar, which was over capacity. Officer Nixon also testified that when he went into the bar, "[t]here were multiple fights breaking out" and objects were being thrown at them. Transcript at 86. He further testified that he was assaulted and that the individual who assaulted him was arrested and cuffed.
 {¶ 7} Officers Nixon and Saler managed to make it outside of the bar and hit their emergency buttons calling for back-up assistance. A code went out indicating that "officer needs assistance." Transcript at 93. Officer Nixon testified that Officer Saler went to get his K-9 dog to help break up the crowd.
 {¶ 8} Officer Charles Saler testified that he was working during the early morning hours of Christmas Eve and was in a marked cruiser with his K-9 dog, Kaboom, a 70 pound German Shepherd. Officer Saler testified that he went out to the Carousel Bar to assist Officer Nixon because the bar had a history of violence. According to the officer, "hopefully our presence will keep violence down and hopefully disperse people without trouble." Transcript at 125. When Officer Saler arrived at the *Page 4 
bar, he observed 100s of cars in the parking lot and observed approximately 59 people exit the bar between 1:42 a.m. and 2:06 a.m.
 {¶ 9} Officer Saler further testified that when he and Officer Nixon entered the bar, fights were breaking out all throughout the bar, which was tightly packed with several hundred people. At some point after Officer Nixon was assaulted, Officer Saler left the bar to get his K-9 dog, Kaboom. Officer Saler testified as follows when asked why he got Kaboom out of his police cruiser:
 {¶ 10} "A. His posture. Hopefully people see the dog out, order them to disperse, and it will get things moving. The less congested and the more we spread out the threats, the less people bump into each other; and we can disperse." Transcript at 130.
 {¶ 11} When he went to his cruiser to get Kaboom, Officer Saler was challenged by a male wearing a black leather coat, black shirt, red sweats and black boots who was approximately ten (10) feet away. At trial, Officer Saler identified such person as appellant.
 {¶ 12} Officer Saler testified that while he was telling appellant that appellant had to leave, appellant was using profanity and threatening to attack both Officer Saler and Kaboom. When Officer Saler threatened to arrest appellant if he did not leave, appellant "stated that he wasn't from around here and he didn't have to go by our petty laws." Transcript at 133. The following testimony was adduced when Officer Saler was asked what happened next:
 {¶ 13} "A. At that point he comes to charge the dog and I and turns to move towards the car, a gold car in the parking lot, because three females come; and they are trying to run interference for him. *Page 5 
 {¶ 14} "Q. Explain this, what do you mean by running interference?
 {¶ 15} "A. Stepping in front of us, stepping in front of him. I tell him that he can't get in the car because I don't know what's in there. At that point all four of us are squeezed between two cars including the gold car he is now trying to get into.
 {¶ 16} "Q. What happens then?
 {¶ 17} "A. I tell him he is not permitted to get into the car, [sic] that he is now under arrest.
 {¶ 18} "Q. Okay, go from there.
 {¶ 19} "A. Still issuing me verbal threats. So now the threat level is extremely high. I don't know what he is going to do. My safety is definitely in jeopardy and so are the people around me because I don't know what he is capable of doing." Transcript at 134-135.
 {¶ 20} Officer Saler testified that he then reached with his right hand to take appellant into custody and that appellant shoved him and attacked Kaboom by putting his thumb into the dog's eye, pulling the dog's ear and trying to take control of the dog's choker chain. Appellant, according to the officer, also struck him while simultaneously striking Kaboom. After appellant ignored verbal orders to stop and release the dog, Officer Saler hit him with his baton to get appellant to release Kaboom. The officer was unsuccessful. According to the officer, appellant continued going after Kaboom and reached for the officer's service revolver in his duty belt. Officer Saler further testified that appellant grabbed for his baton. When asked about the time frame, Officer Saler testified that the struggle lasted over five minutes. Once back-up assistance arrived on the scene, appellant was tackled by another Canton police officer and was arrested. *Page 6 
 {¶ 21} At trial, three women who were with appellant on the evening in question testified that appellant grabbed Kaboom because Officer Saler was "siccing" the dog on them.
 {¶ 22} At the conclusion of the evidence and the end of deliberations, the jury, on April 25, 2007, found appellant guilty of aggravated robbery, assaulting a police dog and resisting arrest. Pursuant to a Judgment Entry filed on April 30, 2007, appellant was sentenced to an aggregate prison sentence of five (5) years.
 {¶ 23} Appellant now raises the following assignment of error on appeal:
 {¶ 24} "THE APPELLANT'S CONVICTION FOR AGGRAVATED ROBBERY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE DUE TO THE PROSECUTOR'S USE OF DIVERGENT THEORIES AND NO EVIDENCE THAT THE JURY REACHED A UNANIMOUS VERDICT."
 I {¶ 25} Appellant, in his sole assignment of error, argues that his conviction for aggravated robbery was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 26} Sufficiency of the evidence is a question of law on whether the evidence is legally adequate to support a jury verdict as to all elements of a crime. State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52, 678 N.E.2d 541. When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court must examine "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to *Page 7 
the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, superseded by State constitutional amendment on other grounds in State v. Smith, 80 Ohio St.3d 89, 1997-Ohio-355,684 N.E.2d 668.
 {¶ 27} In considering an appeal concerning the manifest weight of the evidence, our standard is as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. See, also, Thompkins, supra. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 28} Appellant was convicted of aggravated robbery in violation of R.C. 2911.01(B). Such section states as follows: "(B) No person, without privilege to do so, shall knowingly remove or attempt to remove a deadly weapon from the person of a law enforcement officer, or shall knowingly deprive or attempt to deprive a law enforcement officer of a deadly weapon, when both of the following apply: *Page 8 
 {¶ 29} "(1) The law enforcement officer, at the time of the removal, attempted removal, deprivation, or attempted deprivation, is acting within the course and scope of the officer's duties;
 {¶ 30} "(2) The offender knows or has reasonable cause to know that the law enforcement officer is a law enforcement officer."
 {¶ 31} R.C. 2923.11 defines a "deadly weapon" as follows: "As used in sections 2923.11 to 2923.24 of the Revised Code: "(A) `Deadly weapon' means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."
 {¶ 32} Appellant, in the case sub judice, specifically, contends that the State used divergent theories in an effort to secure a conviction and that there was no evidence that the jury reached a unanimous verdict. Appellant notes that, in order to convict him of aggravated robbery pursuant to R.C. 2911.01(B), the jury had to find beyond a reasonable doubt that a deadly weapon was involved. Appellant further notes that the State argued during closing arguments that appellant could be convicted if the jury found that he attempted to take either Officer Saler's service gun or his baton and that, therefore "a segment of the jury may have found sufficient proof under the `firearm' scenario and not the `baton' scenario" and vice versa. On such basis, appellant further maintains that there was no evidence that the jury reached a unanimous verdict.
 {¶ 33} However, while a jury must reach a unanimous verdict upon each element that makes up a crime, it "need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element [.]" Richardson v. United States (1999),526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed.2d 985 (citations *Page 9 
omitted). Where an element can be accomplished by alternative means, the jurors need not agree on which means the defendant used so long as they agree that the element is satisfied. Id. at 817-818. If the evidence supports the verdict under one factual alternative, we do not need to reverse the conviction because the evidence is insufficient to support another.
 {¶ 34} In the case sub judice, there was testimony before the jury that both the gun and the baton were deadly weapons. Officer Saler testified, when asked, that a baton can be a deadly weapon and further testified that he was authorized to shoot someone if he or she got ahold of the officer's baton. The "deadly weapon" element of the offense of aggravated robbery was thus satisfied regardless of whether the gun or baton is considered. See State v. Collins, Richland App. No. 2003-CA-0073, 2005-Ohio-1642, in which this Court stated, in relevant part, as follows: "The Schad[1] court noted: `We have never suggested that in returning general verdicts in [cases proposing multiple theories] the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone. In these cases, as in litigation generally, `different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.' Id. at 631-632, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555, quoting McKoy v. N. Carolina (1990), 494 U.S. 433, 449, 110 S.Ct. 1227,108 L.Ed.2d 369 (Blackmun, J., concurring)." State v. Skates (2004),104 Ohio St.3d 195, 205-206, 2004-Ohio-6391 at ¶ 53-54, 819 N.E.2d 215, 237. *Page 10 
 {¶ 35} "Therefore, we hold that because all the jurors in Appellant's case agreed on the verdict, they were not required to unanimously agree upon any one purpose for the murder of Robert Clark." Id at paragraphs 159-160.
 {¶ 36} Moreover, while appellant argues that there is no evidence that the jury reached a unanimous verdict, we note that the jury was instructed that their verdict was to be unanimous. The prevailing rule is, "a general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction, even where an indictment alleges numerous factual bases for criminal liability."State v. Johnson (1989), 46 Ohio St. 3d 96, 104, 545 N.E.2d 636, citingUnited States v. Beros (CA. 3, 1987), 833 F.2d 455, 460.
 {¶ 37} Finally, upon our review of the record, we find that, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of aggravated robbery proven beyond a reasonable doubt. We further find that the jury did not lose its way in convicting appellant of aggravated robbery. *Page 11 
 {¶ 38} Appellant's sole assignment of error is, therefore, overruled.
 {¶ 39} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
 Edwards, J. Gwin, P.J. and Wise, J. concur *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] The complete citation is Schad v. Arizona (1991), 501 U.S. 624,111 S.Ct. 2491. *Page 1