[Cite as *State v. V.W.*, 2015-Ohio-5543.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 14AP-1045 |
| v. | : | (C.P.C. No. 13CR-5283) |
| [V.W.], | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 31, 2015

*Ron O'Brien*, Prosecuting Attorney, and *Valerie Swanson*, for appellee.

*Yeura R. Venters*, Public Defender, and *John W. Keeling*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, V.W., appeals from a final judgment of the Franklin County Court of Common Pleas, rendered on November 25, 2014, wherein a jury found him guilty of a single violation of R.C. 2907.05, gross sexual imposition, and the trial court sentenced him to five years imprisonment based on the indictment's summary of defendant's conviction as being a felony of the third degree. We find errors in the trial court's imposition of a sentence in excess of the maximum authorized by law; i.e., that he was convicted of a felony of the fourth degree, and in defendant's case, the failure to instruct the jury that, if it found defendant guilty, its verdict needed to be unanimous as to the particular facts by which defendant committed the crime. We reverse and remand for proceedings consistent with this decision.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2}    On October 3, 2013, defendant was indicted for three counts of rape, three counts of sexual battery, and one count of gross sexual imposition.  The alleged victim was his teenage daughter, B.W.  Approximately one year later, on November 18, 2014, the trial began.

{¶ 3}    B.W. testified first.  She testified that on May 11, 2013, her father performed oral sex on her while they were watching a movie.  She said that earlier in the day he performed oral and digital sex on her in the garage.  She suggested that similar incidents had happened many times in the past.  B.W. also testified that they had oral and digital sex on more than one occasion while visiting at her grandmother's house while her grandmother was home.  She additionally said an incident occurred where her father performed digital sex on her under a blanket while her stepmother was seated in a chair next to them.

{¶ 4}    On cross-examination B.W. admitted that she was treated at Nationwide Children's Hospital for a broken collarbone on May 12, 2013, but said nothing to any of the personnel there about the alleged sexual incident the day before.  Further, she admitted lying repeatedly to and about her uncle and his girlfriend, with whom she lived during the 2013-14 school year.

{¶ 5}    Concerning her uncle, on cross-examination B.W. initially denied making false allegations to Franklin County Children Services ("FCCS") that her uncle had also touched her inappropriately.  But later B.W. admitted that she had made those allegations.  B.W. admitted that those allegations coincided with her uncle refusing to permit her to get a tattoo for her 16th birthday in June 2014.  B.W. further testified on cross-examination that she told a social worker at Nationwide Children's Hospital in 2013 after the incident with defendant (her father) no one had ever touched her inappropriately except defendant.  B.W.'s false allegations against her uncle occurred less than one year after she disclosed to the FCCS' social worker her father's activities with her.  When she accused her uncle of improper conduct, she alleged it had occurred two years previously (in 2012).  In short, in 2013, B.W. claimed her father was the only one who had molested her, but less than one year later she reported to FCCS that her uncle had touched her inappropriately in 2012.

{¶ 6}   The next witness was Detective David Phillips.  He testified that June 14, 2013 was the first time B.W.'s complaint had been disclosed to authorities.  He testified that the case was referred to him from FCCS on June 20, 2014.  Detective Phillips testified that there were three Franklin County addresses implicated in the investigation of B.W.'s allegations of sexual abuse: Lockbourne Road (B.W.'s grandmother's home), Westbear Court (B.W. and her family's residence in 2013), and Celina Road (a prior residence of the family).

{¶ 7}   Gail Hornor, a nurse practitioner with the Center for Family Safety and Healing (formerly known as the Center for Child and Family Advocacy; hereinafter "Center") also testified.  She testified that she examined B.W. and found a normal hymen, without tears or scars.  In fact, the physical exam was entirely normal.  Although a "trauma symptom checklist" revealed that B.W. was "having distressing thoughts about sex."  (Tr. Vol. I, 165-66.)

{¶ 8}   The final witness for the state was Anne Brady, a social worker with the Center.  Brady testified that she interviewed B.W., and the court allowed the prosecution to play a video of that interview.  The video interview contained more detail than B.W.'s live testimony about the sexual activity with her father, including remarks made by her father to the effect that if she needed something sexually he could give it to her and it would be safer than with boys.  In addition, it contained statements by B.W. to the effect that on one occasion when she was in fifth grade, her father hit her hard with an open hand on the back and that her teacher notified FCCS.

{¶ 9}   After recalling Detective Phillips briefly to clarify the exact location of the houses in which sexual abuse allegedly occurred, the state rested.

{¶ 10} Defendant presented witnesses in his defense.  First, defendant's wife, B.W.'s stepmother, testified that she first met B.W. in 1999 and married appellant in 2001.  She stated that she never saw B.W. ever get under a blanket with her father and never saw her husband touch B.W. inappropriately.  She confirmed that B.W. stayed up late and watched a movie with her father the Saturday night before Mothers Day 2013, but she said that she was in bed in the adjoining bedroom with the door open and heard nothing unusual.  She also said that B.W. was only alone with her father one time at her grandmother's house.  She testified that B.W. had been lying, sneaking around, and

getting into boy troubles. For this reason, shortly before B.W. made the allegations against defendant, she and defendant had grounded B.W., taken away her cell phone, and told B.W. that they felt she was not trustworthy enough to be permitted to go on a youth group church mission trip to Bali set for June 2013. She finally directly testified that B.W. is not of truthful character.

{¶ 11} Thereafter, B.W.'s stepgrandmother testified that she had B.W. in her daycare from ages 2-10. About B.W.'s character for honesty she stated:

> [B.W.] never told the truth. If - - anything she said, I would automatically assume that she was telling a lie. Because I had children's monitors all over the place because they were small rooms, and if I moved to change a baby, she would play with the kids and get them into trouble, or she would say that they had done something that they hadn't and I could hear it on the monitor and I knew what was going on. And I run a tight ship and am very conscious of childcare versus babysitting. So we did not get along.

(Tr. Vol. II, 275-76.)

{¶ 12} The next witness was a friend of the family from church. He testified that B.W. started coming by his house in the mornings before school to wait for the bus because it stopped near his house and she could take shelter from the elements inside, finish up last pieces of homework, and fix her hair if she wanted to. He attempted to testify that B.W. argued with him one day about whether she would get on the bus for school and threatened him by telling him about a friend of hers who dealt with a difficult parent by making allegations against the parent and getting the parent investigated. The state objected and ultimately the court did not permit this testimony. However, the family friend was permitted to testify as to B.W.'s reputation for honesty. He concluded, "I would not trust her truthfulness much farther than I could dribble her." (Tr. Vol. II, 287.)

{¶ 13} B.W.'s uncle and his live-in girlfriend (who is frequently referred to in the record as B.W.'s aunt) were the last two defense witnesses. They both testified that in June 2013, as a result of the allegations in this case, B.W. came to live with them. They testified that initially things were fine. But B.W.'s aunt said they had trouble getting B.W. to tell the truth, even about simple things; her uncle testified, "[B.W.] is a habitual liar, always has been. I don't remember a day when she lived with me where there was not an

issue with her not telling the truth.  It was an everyday occurrence." (Tr. Vol. II, 299.) After approximately one year, in June 2014, B.W. was turning 16 and informed her aunt and uncle that she wanted a tattoo. Both told her she could not have one.  The conflict about the tattoo increased to the point that, after B.W. left on a Friday or Saturday for a visit with her grandmother, the next day or two after, FCCS visited B.W.'s uncle's home, informing him that B.W. had made allegations of inappropriate conduct against him.

{¶ 14} Following that testimony, the defense announced it had no further witnesses, but it sought to introduce an apology note written by B.W. apologizing for all the times she had lied to her aunt and uncle and said things she did not mean.  Apparently accepting the state's argument that B.W. had been cross-examined about the letter and had admitted making the statements contained therein, the trial court did not permit this item into evidence and, when the jury asked to see it during their deliberations, the trial court denied the jury's request.

{¶ 15} On November 21, 2014, after being given a *Howard* charge[1] due to difficulty reaching a verdict, the jury returned with a verdict.  The jury found appellant guilty of one count of gross sexual imposition and not guilty of the remaining six counts of the indictment.

{¶ 16} Three days later, on November 24, 2014, the trial court held a sentencing hearing.  Neither side presented new evidentiary material or statements.  The trial court revoked appellant's judicial release on an unrelated case as a result of his conviction and reinstated the original four-year sentence in that case.  The court then sentenced him to five years on the gross sexual imposition count to run consecutively with the term of imprisonment in the other case.  Defendant now appeals.

## II.  ASSIGNMENTS OF ERROR

{¶ 17} Appellant asserts seven assignments of error:

> **First Assignment of Error:** The Trial Court Committed Plain Error When It Sentenced The Defendant To A Third-Degree Felony Prison Term Of Five Years For A Conviction Of Gross Sexual Imposition In Violation Of R.C. 2907.05(A)(1) When The Offense Is Only A Fourth-Degree Felony Pursuant To R.C. 2907.05(C)(1) And The Maximum Prison Sentence

---

[1] *See State v. Howard*, 42 Ohio St.3d 18 (1989).

That Can Be Imposed Under R.C. 2929.14(A)(4) Is Eighteen Months.

**Second Assignment of Error:** The Trial Court Committed Plain Error When Evidence Of Multiple, Separate Incidents Of Conduct Was Presented All Of Which Could Support The Allegation Of A Single Count Of Gross Sexual Imposition And The Court Failed To Indicate To The Jury Which Incident Was Basis For The Offense Or To Instruct The Jury That It Had to Unanimously Agree To A Particular Incident Before It Could Convict The Defendant. This Deprived The Defendant Of His Substantial Rights To A Unanimous Verdict, Proof Beyond A Reasonable Doubt, And Effective Appellate Review And Is Cognizable As Plain Error.

**Third Assignment of Error:** The Trial Court Erred When It Admitted, Over The Defendant's Objection, Out-Of-Court Declarations In Violation Of The Defendant's Right To Confrontation As Guaranteed By The Sixth Amendment To The United States Constitution, Section 10, Article I of The Ohio Constitution, And In Violation Of The Rules Of Evidence.

**Fourth Assignment of Error:** The Trial Court Erred When It Entered Judgment Against The Defendant When The Evidence Was Insufficient To Sustain The Conviction.

**Fifth Assignment of Error:** The Trial Court Erred When It Entered Judgment Against The Defendant Against The Manifest Weight Of The Evidence.

**Sixth Assignment of Error:** The Trial Court Erred When It Ruled That The Defendant Could Not Present Evidence That The Complainant Had Threatened A Family Friend By Telling Him That She Could Get Him Into Trouble By Making An Allegation Against Him To Children's Services And Further Erred When It Refused To Allow The Defendant To Admit Into Evidence A Letter Written By The Complainant Where She Apologized For Being A Such Discipline Problem And For All Of Her Hurtful Lies.

**Seventh Assignment of Error:** The Trial Court Erred When It Allowed The State To Introduce, Over Objection, Improper Other Act Evidence, By Way Of An Out-Of-Court Recording, That The Defendant Had Hit The Complainant Years Ago With His Open Hand.

For purposes of clarity, we address these assignments of error out of order.

## III. DISCUSSION

### A. First Assignment of Error – Whether the Trial Court Should Have Sentenced Appellant on his Conviction as a Fourth-Degree Rather Than a Third-Degree Felony

{¶ 18} Count 7 of the indictment against appellant read:

> The Jurors of the Grand Jury of the State of Ohio, duly selected, impaneled, sworn, and charged to inquire of crimes and offenses committed within the body of Franklin County, in the State of Ohio, upon their oath do find and present that [V.W.] late of said County, from on or about March 1, 2011 to May 1, 2013, within the County of Franklin aforesaid, in violation of section 2907.05 of the Ohio Revised Code, did have sexual contact with [B.W.], not his spouse, the said [V.W.] having purposely compelled [B.W.] to submit by force or threat of force, contrary to the statute in such cases made and provided and against the peace and dignity of the State of Ohio.

The summary page of the indictment listed Count 7 as a third-degree felony. However the language, "purposely compelled [B.W.] to submit by force or threat of force" mirrors the language found in R.C. 2907.05:

> (A) No person shall have sexual contact with another, not the spouse of the offender; * * * when any of the following applies:
>
> (1) The offender *purposely compels the other person, * * * to submit by force or threat of force.*

(Emphasis added.) R.C. 2907.05(C)(1) makes a violation of R.C. 2907.05(A)(1) a felony of the fourth degree.

{¶ 19} From March 1 until June 17, 2011, B.W. was under 13 years of age; she was 12 years old until June 17, 2011. A gross sexual imposition offense against a person under age 13, under R.C. 2907.05(A)(4), is a felony of the third degree. R.C. 2907.05(C)(2). However no testimony was adduced at trial to establish that any incident of abuse occurred in the time frame between March 1, and June 17, 2011, and the indictment was not phrased so as to invoke the provisions of R.C. 2907.05(A)(4).

{¶ 20} Appellant was convicted of a fourth-degree felony rather than a third-degree felony violation of R.C. 2907.05 and should have been sentenced accordingly. The maximum prison term that could have been imposed for a felony of the fourth degree was 18 months. R.C. 2929.14(A)(4). Because the trial court sentenced appellant to five years, it imposed a sentence that it lacked the power to impose. *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, ¶ 22. Appellant's attorney objected to the imposition of consecutive maximum sentences during sentencing and both sides admit on appeal that the trial court sentenced beyond its authority. We sustain appellant's first assignment of error.

## B. Second Assignment of Error – Whether the Trial Court Committed Plain Error in Failing to Give a Specific Instruction on Unanimity

{¶ 21} We note that appellant's trial counsel lodged no objection to the jury instructions. The failure to object typically results in waiver on appeal. To consider this assignment of error, we must employ a plain error analysis. *See, e.g.*, *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 60. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). The Supreme Court of Ohio has recently reiterated that this rule places " 'three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, *i.e.*, a deviation from a legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.' " *State v. Lynn*, 129 Ohio St.3d 146, 2011-Ohio-2722, ¶ 13, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002); *see also State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 62.

{¶ 22} In most cases a general instruction on the requirement that the jury decide the case unanimously is sufficient. *State v. Johnson*, 46 Ohio St.3d 96, 104 (1989), *overruled in part* not relevant here by *State v. Jenks*, 61 Ohio St.3d 259, 282 (1991). In appellant's case, the trial judge simply gave a general instruction.

{¶ 23} The Supreme Court has recognized that:

> [I]f a single count can be divided into two or more "distinct conceptual groupings," the jury must be instructed specifically that it must unanimously conclude that the defendant committed acts falling within one such grouping in order to

> reach a guilty verdict. *United States v. Gipson* (C.A. 5, 1977), 553 F.2d 453, 458; *accord United States v. Beros*, [833 F.2d 455], 461 [(3d Cir.1987)] (where there appears a possibility of jury confusion in light of the allegations made and the statute charged, an augmented general instruction may be necessary to ensure that the jury understands its duty to unanimously agree to a particular set of facts); *United States v. Echeverry* (C.A. 9, 1983), 698 F.2d 375, modified (1983), 719 F.2d 974, 975; *United States v. Payseno* (C.A. 9, 1986), 782 F.2d 832, 837; but, see, *Berrisford v. Wood* (C.A. 8, 1987), 826 F.2d 747, 754.

*Johnson* at 104-05; *see also State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, ¶ 49-52; *State v. Marrero*, 10th Dist. No. 10AP-344, 2011-Ohio-1390, ¶ 97-99 (explaining the difference between multiple acts cases and multiple means cases).

{¶ 24} In this case, B.W. testified to several instances of sexual contact between appellant and her at different locations and different times. For instance, B.W. testified to incidents at her grandmother's house (one on the couch and another in the bedroom) and also at her stepmother's house under a blanket. Any of these could have formed the basis for a conviction for gross sexual imposition if believed by the jury. R.C. 2907.05(A)(1). However, because only a general instruction was given, there is no certainty that the verdict was unanimous. It is possible that, for instance, 6 jurors agreed that appellant compelled B.W. to submit to sexual contact at her grandmother's house but not at her stepmother's house, and 6 other jurors agreed that he did so at B.W.'s stepmother's house but not at her grandmother's house (the location being relevant only to identifying the particular alleged incident). All 12 jurors could have agreed that appellant was guilty of gross sexual imposition, but the verdict would not have been unanimous on which factual incident supported the verdict. The trial court should have specifically instructed the members of the jury that they needed to agree not only as to appellant's guilt, but also as to which factual incident supported the conclusion that he was guilty. *Johnson* at 104-05. It is difficult to know what internal conflict in the jury required the trial court to deliver the *Howard* charge, but the jury obviously struggled with its verdict.

{¶ 25} In a case somewhat similar to this, the Ninth District Court of Appeals found error (but not plain error) in the trial court's failure to instruct specifically on the unanimity requirement. *State v. Guenther*, 9th Dist. No. 05CA008663, 2006-Ohio-767.

In *Guenther* the defendant had touched the victim's breasts on three separate occasions at various locations at a local community center. *Id.* at ¶ 15. After recognizing that a general unanimity instruction is usually sufficient, the Ninth District reasoned:

> Because the trial court only gave a general unanimity instruction, specifically that the jury must be unanimous in its verdict, it is unclear whether the jury convicted appellant of gross sexual imposition, for example, by finding the element of force in regard to the food room incident, and the element of sexual contact in regard to the office incident. Moreover, based on the trial court's general instruction, it is unclear whether some jurors might have found that appellant had sexual contact with the victim in the office, while others might have premised their verdict on a finding that appellant had sexual contact with the victim in the food room or small room. Accordingly, the trial court's general unanimity instruction was insufficient to ensure that the individual jurors did not "pick and choose" evidence from the various distinct incidents to satisfy the elements of the charges.

*Id.* at ¶ 34. We agree with the analysis of the Ninth District; the failure to instruct in this case was error and, under the standard of *Johnson*, the error was obvious. *Johnson* at 104-05; *see also Lynn* at ¶ 13. However, the Ninth District ultimately concluded that, because the evidence was weighty as to each of the alleged incidents, the defendant had failed to show that the outcome of his case would have been affected. *Guenther* at ¶ 36; *see also Akron v. Stalnaker*, 9th Dist. No. 23617, 2007-Ohio-6789, ¶ 5-10. Thus, while it found error, the Ninth District did not find plain error.

{¶ 26} Our view of the facts of this case causes us to reach a different outcome than the Ninth District in applying a plain error analysis. In the case under review, B.W.'s testimony was the only evidence that her father had violated her. No corroborating evidence existed. The video of her interview merely bolstered her testimony with additional detail. B.W.'s stepmother testified that she was in the same room or an adjoining room during two of the alleged incidents and testified that she observed nothing inappropriate. Moreover, every witness at trial who knew B.W. well enough to testify to her character for truthfulness testified that she lies habitually, and B.W. herself admitted multiple acts of lying. In addition, B.W. admitted making allegations against her uncle when he refused to let her get a tattoo. B.W.'s stepmother explained that shortly before B.W. made allegations against appellant, she and appellant had disciplined B.W. quite

severely by grounding her, taking away her cell phone, and telling her that they did not trust her enough to travel out of the country on a previously planned trip to Bali.

{¶ 27} The jury found appellant not guilty of all but one of the offenses for which he was indicted (including all the offenses based on specific incidents). After asking for a copy of B.W.'s letter that was not admitted into evidence, and after the trial court found it necessary to administer a *Howard* charge, the jury found appellant guilty of the offense of gross sexual imposition, the least serious offense of the indictment. The trial court had given only a general unanimity instruction when it instructed the jury before its deliberation. Based on our application of the law to the circumstances of this particular case, we find that the jury's verdict lacks the certainty that it was unanimous as to "a particular set of facts." *United States v. Beros*, 833 F.2d 455, 461 (3d Cir.1987); *see also Johnson* at 104-05. We cannot rule out that, although the entire jury agreed that appellant was guilty of gross sexual imposition, it did not unanimously agree that a particular factual incident supported its guilty verdict on gross sexual imposition. This is because the evidence introduced included instances of such criminal conduct occurring at multiple locations and at multiple times. Without a specific unanimity instruction having been given, there is no certainty that the jurors unanimously agreed that a particular factual incident supported their guilty verdict that appellant committed the offense of gross sexual imposition against his daughter.

{¶ 28} We find this error to be obvious. *Johnson* at 104-05. Under the particular circumstances of this case we find that appellant has shown that the trial court's failure to instruct more specifically on unanimity leaves the integrity of the jury's verdict uncertain, and we cannot say that appellant was found guilty by the unanimous concurrence of all jurors. Accordingly, we find plain error in the failure to instruct the jury that its verdict must be unanimous as to a particular set of facts in its finding of guilt. Under the facts of this case, we find "a reasonable *probability* that the error resulted in prejudice" and accordingly, that this obvious error " 'affected the outcome of the trial.' " (Emphasis sic.) *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 22, quoting *Barnes* at 27.

{¶ 29} Appellant's second assignment of error is sustained.

**C. Third, Sixth, and Seventh Assignments of Error – Whether the Trial Court Erred in Making Several Evidentiary Rulings**

{¶ 30} Because we have sustained the first two assignments of error, which require that the conviction and sentence be vacated, the assignments of error concerning evidentiary rulings made at trial are no longer ripe for decision. *State ex rel. Elyria Foundry Co. v. Indus. Comm.*, 82 Ohio St.3d 88, 89 (1998), quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967) (" 'judicial machinery should be conserved for problems which are real or present and imminent, not squandered on problems which are abstract or hypothetical or remote' "). That is, the trial court's alleged errors regarding the admission and exclusion of evidence occurred in a trial whose result has already been vacated. On remand, the parties may decide not to retry the case, if they do elect a retrial, they may attempt to present different evidence, the trial court may rethink some of its decisions and decide the matters differently, or other unforeseeable circumstances may arise that otherwise change the landscape of the litigation. Thus, we will not address the third, sixth, or seventh assignments of error, and they are rendered unripe by our decisions on the first and second assignments of error.

**D. Fourth and Fifth Assignments of Error – Whether the Conviction was Not Supported by Sufficient Evidence or Against the Manifest Weight of the Evidence**

{¶ 31} The Supreme Court has "carefully distinguished the terms 'sufficiency' and 'weight' * * *, declaring that 'manifest weight' and 'legal sufficiency' are 'both quantitatively and qualitatively different.' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 10, quoting *State v. Thompkins*, 78 Ohio St.3d 380 (1997), paragraph two of the syllabus. The difference that concerns us in this case is that "the Double Jeopardy Clause does not preclude retrial of a defendant if the reversal was grounded upon a finding that the conviction was against the weight of the evidence. However, retrial is barred if the reversal was based upon a finding that the evidence was legally insufficient to support the conviction." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 47 (1982). We have already sustained assignments of error that require that the conviction and sentence be vacated in this case, and we therefore need not consider appellant's now moot claim that his conviction was against the manifest weight of the

evidence. However the sufficiency inquiry remains ripe, because if appellant's conviction was not supported by sufficient evidence, jeopardy would attach.

{¶ 32} Sufficiency is:

> " 'a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law."

*Eastley* at ¶ 11, quoting *Thompkins* at 386, quoting *Black's Law Dictionary* (6th Ed.1990). "In reviewing a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 47, quoting *Jenks* at paragraph two of the syllabus.

{¶ 33} Although B.W.'s credibility was attacked with some apparent success at trial, the inquiry when deciding sufficiency is not whether B.W. is to be believed; credibility is a matter of weight. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79. The question is whether a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *Monroe* at ¶ 47.

{¶ 34} In this case, (aside from the jurisdiction and venue elements) the elements of gross sexual imposition are:

> (A) No person shall have sexual contact with another, not the spouse of the offender; * * * when any of the following applies:
>
> (1) The offender purposely compels the other person, * * * to submit by force or threat of force.

R.C. 2907.05.

> (B) "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

R.C. 2907.01. The testimony of B.W., if believed, established that on several occasions her father performed cunnilingus on her and digitally penetrated her vagina and that, on at

least one of the occasions, he held her down with his body weight while doing so. In addition, B.W. testified that she was afraid of her father and did not resist or tell anyone for that reason. If believed, this testimony shows that appellant had sexual contact with his daughter and compelled her to submit by force or threat of force. The evidence if believed was sufficient in this case.

{¶ 35} We overrule appellant's fourth assignment of error and find that his fifth assignment of error is moot.

## IV. CONCLUSION

{¶ 36} Because we find that the evidence presented at trial, if believed, was sufficient to convict appellant, we overrule appellant's fourth assignment of error. However, we find error in the fact that appellant was sentenced as if convicted of a third-degree felony when the record shows he was convicted of a fourth-degree felony. We also find plain error in the trial court's failure to instruct the jurors specifically on the need for them to reach a unanimous decision not only on their ultimate finding of guilt of any of the offenses charged but also the factual instance underlying any such finding. We therefore sustain appellant's first and second assignments of error and vacate both the conviction and sentence. As a result of our decision on the first two assignments of error, the fifth assignment of error is moot, and the third, sixth, and seventh assignments of error are rendered unripe for decision. We remand the case for proceedings consistent with this decision.

*Judgment reversed*
*and cause remanded.*

KLATT, J., concurs.
SADLER, J., concurs in judgment only.