[No. C010490. Third Dist. Sept. 2, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN JOSEPH HIGGINS et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III, IV.

**COUNSEL**

Barry Morris, under appointment by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, Michael J. Weinberger and Robert D. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RAYE, J.**—We are asked to determine the constitutionality of Penal Code section 288.5, the 1989 legislative response to the problems of prosecuting the so-called resident child molester, which defines "the continuous sexual abuse of a child" under 14 years of age as a crime.

A jury convicted 26-year-old John Joseph Higgins of one count of continuous sexual abuse of 8-year-old Russell R. (Pen. Code, § 288.5) between March 1, 1990, and August 17, 1990, and two counts of committing a lewd act upon 8-year-old Jimmy B. (Pen. Code, § 288, subd. (a)) with a special finding the oral copulation involved substantial sexual conduct (Pen. Code, § 1203.066, subd. (a)(8)). Defendant contends Penal Code section 288.5 unconstitutionally deprives an accused of due process by failing to give notice of the specific acts of molestation with which he is charged and deprives the criminal defendant of the right to a unanimous jury verdict by permitting a conviction without unanimity on which acts of molestation occurred. We disagree and, based on our analysis set forth below, conclude the statute survives constitutional scrutiny. In the unpublished portion of this opinion, we find evidence of prior uncharged acts of molestation upon Russell was properly admitted and there was sufficient evidence to support the jury's verdicts that defendant sodomized and orally copulated Jimmy.

This is the tragic, but not uncommon, story of a lonely young boy who endures repeated molestations rather than suffer isolation and his mother's threats and beatings. The story begins in late 1988 when defendant moved his trailer to Nyack and became acquainted with the R. family. He first met Rick R. at the Nyack cafe. Rick was living in Emigrant Gap with his mother and stepfather, Nancy and Wilbur R., his girlfriend, Kimberly Slack, and his six-year-old brother, Russell. Rick's sister, Lia B., and her six-year-old son, Jimmy, and four-year-old son, Joey, lived on the same street in Emigrant Gap. Nancy invited defendant to their home and, over time, began to treat defendant like a son.

When defendant first met Russell his face was bruised in the shape of a handprint. Nancy beat Russell with her hand, a belt, and a crib slat and threatened him with a stick and Rick, like his mother, was very rough with Russell, often making him scream. Nancy frequently asked defendant to watch Russell. Against this backdrop of family cruelty, defendant and Russell began to develop a close relationship.

During the summer of 1989 defendant and his roommate, Jerry, moved his trailer to a vacant gas station in Emigrant Gap, two blocks from the R. house. Rick and Kim moved into a trailer adjacent to defendant's. Russell began visiting defendant often and together they went fishing, four wheeling, and exploring into the mountains. Defendant bought Russell a fishing pole, stuffed animals, and cowboy boots.

Russell spent many nights with defendant and Jerry in the trailer. Defendant touched Russell's penis with his penis, masturbated Russell's penis, and sodomized him. Although the molestations did not occur every time he spent the night in the trailer, Russell could not remember how many times they occurred.

In December 1989 defendant moved an abandoned 1941 Oakland transit bus to the gas station where he and Jerry continued to reside for about a month. Defendant then moved to Boomtown about January 1990. Russell considered defendant his friend and enjoyed going places with him. Russell spent the night with defendant in Boomtown where he was again sodomized and masturbated by defendant. Defendant put lotion on Russell's penis and told him not to tell anyone. Russell complied because he was afraid.

In March 1990 defendant and Jerry moved into a trailer in Truckee. On April 11 Russell and Jimmy and Joey B. went with defendant and Jerry to the Circus Circus casino in Reno and spent the night with them in their trailer in Truckee. Jimmy slept in the bed with defendant. Jimmy was

awakened during the night by defendant "sticking his number one up my number two." He said, "You're sick John," to which defendant replied, "Shut up and hump." After removing his penis from Jimmy's anus, defendant flipped Jimmy over and tried to put his penis inside Jimmy's mouth. He touched his mouth and tried to go up and down. Jimmy got away and went into the bathroom crying with a terrible stomachache.

Defendant moved to the NACO campground where he was employed on April 28. Russell spent every weekend with defendant until school was out in June. During the summer Russell spent more time with defendant, and in August they spent two weeks together. Defendant molested Russell every night he slept in the bus at NACO, approximately 30 or 40 times. The molestations included sodomy, oral copulation, and masturbation. Russell did not tell his mother because he was afraid she would whip him, even though the molestations were painful.

The manager of the campground observed marks and bruises on Russell and asked defendant where they had come from. Defendant replied, "Well, that's sort of normal because he's always beaten." Defendant confronted Wilbur about the bruising, and when Wilbur failed to investigate or inquire about the injuries, he later confronted Nancy. Recalling one of the beatings, Nancy laughed about the incident and Russell's resulting injuries. Defendant threatened to turn her in "if [he saw] anything like that again."

Jimmy joined defendant, Jerry, and Russell for swimming at NACO sometime during the summer of 1990 and then spent the night. He went to sleep on the floor but, awakened by mice crawling on him, he got into bed with defendant and Russell. He testified defendant sodomized him that night. When he returned home the following day, he asked Joey to tell his mother what happened. Defendant was arrested on August 17.

Both Russell and Jimmy were examined by Doctor Paul Rork. Doctor Rork observed a scar and two large folds in Russell's rectum, findings consistent with acts of sodomy between March and August 1990. He did not find any bruising, redness, or irritation to the penis, scrotum, or testes, or anal laxity. He testified the scar could persist for years, but the folds would slowly disappear in six to eight months. Although Jimmy had some slight redness of the anus, the doctor concluded the examination was within normal limits.

Defendant was charged with two counts of committing lewd acts against Jimmy (sodomy and oral copulation) for the events surrounding the trip to Circus Circus between March 1, 1990, and April 28, 1990, one count of

committing a lewd act against Jimmy for the events following the swimming at NACO between April 28, 1990, and August 17, 1990, and one count of continuous sexual abuse of Russell from March 1, 1990, to August 17, 1990. At the trial, defendant denied molesting either of the boys. The jury failed to reach a verdict on the one count involving Jimmy at the campground, and defendant was found guilty of the remaining counts.

## I

Many courts have lamented the difficulties of prosecuting resident child molesters. (See *People* v. *Jones* (1990) 51 Cal.3d 294 [270 Cal.Rptr. 611, 792 P.2d 643]; *People* v. *Superior Court* (*Caudle*) (1990) 221 Cal.App.3d 1190, 1195 [270 Cal.Rptr. 751]; *People* v. *Luna* (1988) 204 Cal.App.3d 726 [250 Cal.Rptr. 878].) Often child victims are able to offer only "generic testimony"; although they are able to describe "repeated acts of molestation occurring over a substantial period of time," they are "unable to furnish many specific details, dates or distinguishing characteristics as to individual acts or assaults." (*People* v. *Jones, supra*, 51 Cal.3d at p. 299.) Society's interest in protecting its youngest and most vulnerable from sexual molestation collides with our fundamental commitment to assuring a criminal defendant due process of law, including the right to adequately prepare a defense and to have guilt determined by a unanimous decision of his or her peers. Both the courts and the Legislature have grappled with the clash between these important values.

The Legislature offered a solution in 1989, by creating a new and separate crime, the continuous sexual abuse of a child. (Pen. Code, § 288.5) Relying on many of the cases which predate the statute's enactment, defendant contends Penal Code section 288.5 is unconstitutional. His constitutional challenge to section 288.5 is apparently one of first impression. (*People* v. *Jones, supra*, 51 Cal.3d 294, 310-311; *People* v. *Superior Court* (*Caudle*), *supra*, 221 Cal.App.3d 1190, 1195.)

Penal Code section 288.5 provides in pertinent part: "(a) Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, . . . or three or more acts of lewd or lascivious conduct under Section 288, with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child. . . . [¶] (b) To convict under this section the trier of fact, if a jury, need unanimously agree only that the requisite number of acts occurred not on which acts constitute the requisite number."

Penal Code section 288.5 was enacted in response to *People* v. *Van Hoek* (1988) 200 Cal.App.3d 811 [246 Cal.Rptr. 352]. In *Van Hoek*, the court found the prosecution's failure to allege and prove specific acts of molestation constituted a fundamental deprivation of due process because the defendant was not afforded an opportunity to prepare an adequate defense. (*Id.* at p. 818.) When the testimony of the young victim is generic, and consequently unspecific as to time or place, the court concluded it was impossible for the prosecution to select or for the jury to unanimously agree upon any specific acts to support a conviction under Penal Code section 288. (*Id.* at p. 816.) "Implicit in the cases requiring specificity of charges and the charges being supported by specific testimony given at trial is the fundamental due process rule, steeped in antiquity, that the prosecution must prove a specific act and the twelve jurors must agree on one specific act." (*Id.* at p. 817 relying on *People* v. *Williams* (1901) 133 Cal. 165 [65 P. 323] and *People* v. *Castro* (1901) 133 Cal. 11 [65 P. 13].)

While the Legislature responded to *Van Hoek* by creating a new crime, the Supreme Court abrogated its holding in *People* v. *Jones, supra,* 51 Cal.3d 294, 320-321. Leaving constitutional scrutiny of the newly enacted section 288.5 to another court on another day, the Supreme Court examined the constitutional implications involved in the traditional prosecution of resident child molesters under section 288 and rejected the *Van Hoek* conclusion that multiple convictions based on generic testimony violated the constitutional right to due process. (*Ibid.*) "Due process of law requires that an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial." (*Id.* at p. 317.) Due process, consisting of both the right to notice and the right to prepare a defense, was not violated by reliance on generic testimony. "We conclude that, given the availability of the preliminary hearing, demurrer and pretrial discovery procedures, the prosecution of child molestation charges based on generic testimony does not, of itself, result in a denial of a defendant's due process right to fair notice of the charges against him." (*Id.* at p. 318.) Moreover, the court, satisfied that credibility, rather than alibi, was the crux of the defense in most resident child molestation cases, decided generic charges did not unduly impair the presentation of a defense. (*Id.* at p. 319.)

Nor was the court in *Jones* persuaded that generic testimony eroded the sanctity of a unanimous verdict. While acknowledging unanimity is constitutionally required (See Cal. Const., art. I, § 16), the court rejected "the contention that jury unanimity is necessarily unattainable where testimony regarding repeated identical offenses is presented in child molestation cases. In such cases, although the jury may not be able to readily distinguish

between the various acts, it is certainly capable of unanimously agreeing that they took place in the number and manner described. [¶] . . . [E]ven generic testimony describes a repeated series of *specific*, though indistinguishable, acts of molestation." (51 Cal.3d at p. 321.) The court admonished trial courts to give a unanimity instruction in a case where the jurors might conceivably disagree as to the particular act committed by the defendant. "But when there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant in fact committed all of them, the jury should be given a modified unanimity instruction which, in addition to allowing a conviction if the jurors unanimously agree on specific acts, also allows a conviction if the jury unanimously agrees the defendant committed all the acts described by the victim." (*Id.* at p. 322.)

*Jones*, for most practical purposes, renders Penal Code section 288.5 unnecessary. While parenthetically reminding prosecutors to exercise discretion in limiting the number of separate counts charged, the Supreme Court has sanctioned convictions of multiple counts of violating Penal Code section 288 based solely on generic testimony. Prosecutors need not rely on the continuous course of conduct exception crafted into section 288.5 when "[t]estimony pitched at such a low level of specificity" suffices to meet the relaxed quantum of proof of multiple violations of section 288 articulated in *Jones*. (51 Cal.3d at p. 327.) Nevertheless *Jones* is relevant, if not dispositive, to our analysis of the constitutionality of section 288.5. For if the Supreme Court is satisfied there is no constitutional infirmity to section 288 convictions predicated exclusively on generic testimony, then neither does the codification of generic proof in section 288.5 violate due process or the right to a unanimous verdict.

The constitutionality of section 288.5 is not dependent on *Jones* rationale, however. ▮ So-called continuous-course-of-conduct crimes, generally committed against the same victim who sustains cumulative injury, require neither allegations nor unanimous findings of specific acts. (*People* v. *Jones, supra*, 51 Cal.3d 294, 326 (Mosk, J., dis.).) In cases "where violation of a criminal statute is charged and the evidence establishes several acts, any one of which could constitute the crime charged" the prosecutor is required to elect which act he was relying on to prove the crime charged or the jury must be given a unanimity instruction. (*People* v. *Thompson* (1984) 160 Cal.App.3d 220, 223-224 [206 Cal.Rptr. 516].) By contrast, when the issue presented to the jury is whether a defendant committed a course of conduct and not whether he committed a specific act on a specific day, the prosecutor does not have to elect a specific act and the jury need not unanimously agree on a specific act. (*People* v. *Ewing* (1977) 72 Cal.App.3d 714, 717 [140 Cal.Rptr. 299].) In several cases, the courts have suggested that repeated

sexual abuse of children is analogous to other continuous-course-of-conduct crimes such as child abuse, pandering, spousal battery, contributing to the delinquency of a minor, and harboring a felon, and called upon the Legislature to define a new crime. (*People* v. *Superior Court (Caudle), supra,* 221 Cal.App.3d 1190, 1198, fn. 6; *People* v. *Luna, supra,* 204 Cal.App.3d 726, 746-747; *People* v. *Moreno* (1989) 211 Cal.App.3d 776, 789 [259 Cal.Rptr. 800].) We agree.

In two cases reaching opposite results in the wake of *Van Hoek,* the courts reiterated the recurring problems in prosecuting resident child molesters and described the obvious analogies to other continuous-course-of-conduct crimes. In *People* v. *Luna, supra,* 204 Cal.App.3d 726, the court echoed Justice Hamlin's dissent in *People* v. *Martinez* (1988) 197 Cal.App.3d 767 [243 Cal.Rptr. 66], lamenting: " 'The court here confronts a case in which the molestation has been so consistent that the minor victim cannot recall distinct and identifiable acts within this course of conduct. Unfortunately, this is not unusual in the prosecution of a "resident child molester" . . . . [¶] If a child has been molested on a regular basis and in a consistent manner . . . the child may have no meaningful reference point of time or detail by which to distinguish one specific act from another. Obviously, the more frequent and repetitive the molestation and the younger the victim, the less likely it becomes that the prosecution can establish one or more specific acts via the testimony of the minor victim. Since many aberrant practices leave no permanent physical evidence and since children are usually molested outside the presence of witnesses, the testimony of the minor victim may be the only evidence on which the prosecution can base its case; rendering such testimony inadequate as a matter of law under circumstances like those here under discussion could effectively insulate the most egregious child molesters from prosecution.' " (204 Cal.App.3d at p. 738.)

Sharing Justice Hamlin's concerns, the court wrote: "It may well be time to redefine the crime resulting from acts of child molestation in continuum and the type of proof necessary to sustain a conviction in these cases." (204 Cal.App.3d at p. 738.) Nevertheless, compelled by precedent and the absence of "sex crimes in continuum to constitute a single offense," the court reversed several counts. The court concluded, "A case can be made for recognizing the repeated sexual abuse of helpless children as a part of the conglomerate continuous-crime exception that applies to pandering (*People* v. *White* (1979) 89 Cal.App.3d 143, 151 []), child abuse (*People* v. *Ewing* (1977) 72 Cal.App.3d 714, 717 []), and contributing to the delinquency of a minor (*People* v. *Lowell* (1946) 77 Cal.App.2d 341, 346-348 []). . . . [¶] However, until the Legislature or a higher court reexamines the matters of proof, due process, and the element of continuum as they relate to the

'resident child molester' case, we feel compelled to stay within the parameters of the law presently fixed." (*People* v. *Luna, supra,* 204 Cal.App.3d at pp. 746-749.)

Similarly, in *People* v. *Moreno, supra,* 211 Cal.App.3d 776, the defendant argued the generic testimony offered to sustain nine counts of various lewd and lascivious acts made it impossible for the jury to unanimously agree he committed the same specific criminal act. In a lengthy but pertinent footnote, the court observed: "The penal statutes appellant was found to have violated describe criminal offenses consisting of an 'act.' For example, Penal Code section 288a, subdivision (a) defines 'oral copulation' as 'the act of copulating the mouth of one person with the sexual organ or anus of another person.' Subdivision (b) of the statute provides that, except as provided in section 288, 'any person who participates in an act of oral copulation with another person who is under 18 years of age shall be punished by imprisonment in the state prison, or in a county jail for a period of not more than one year.' (See also Pen. Code §§ 286 and 288.) Penal statutes such as this are thus different from those which may be violated by a continuous course of conduct or by a series of acts over a period of time. Penal Code section 273a is a statute of the latter variety; it provides that 'Any person who . . . willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health may be endangered,' is guilty of a crime. Because the offenses typically committed by 'resident child molesters' represent repetitive or continuous conduct in many ways analogous to offenses such as that described in Penal Code section 273a, the Legislature did not need to define them as necessarily constituting a single 'act.' If such offenses were otherwise described in the Penal Code, the problems of pleading and proof with which we are here concerned might be eliminated." (*People* v. *Moreno, supra,* 211 Cal.App.3d 776, 789, fn. 3.)

The Legislature responded to the judicial prodding, and by enacting Penal Code section 288.5 defined a course-of-conduct crime, the continuous sexual abuse of a child. We agree with the many courts, which together with the Legislature, found a compelling analogy between the resident child molester scenario and the broader category of child abuse. In *People* v. *Ewing, supra,* 72 Cal.App.3d at page 717, we held: "Penal Code section 273a . . . punishes the acts generally classed as child abuse. . . . Although the child abuse statute may be violated by a single act [citation], more commonly it covers repetitive or continuous conduct. [Citations.] Here, the information alleged a course of conduct in statutory terms which had occurred between two designated dates. The issue before the jury was whether the accused was

guilty of the course of conduct, not whether he had committed a particular act on a particular day. The instruction requiring jury unanimity as to particular acts was inappropriate. Its omission was not error."

In *People v. Thompson, supra*, 160 Cal.App.3d 220, the court found the crime of spousal battery a continuous-course-of-conduct crime by also analogizing to child abuse. "Both the victim of spousal and of child abuse are likely to be unwilling to report their abuse to the authorities due to fear of physical and/or emotional retaliation on the part of the attackers. Both patterns of behavior are based on controlling another individual through violence. We see no 'conceptual difference' between the two crimes." (*Id.* at p. 226.) Nor do we see any conceptual difference between sexual or other kinds of abuse of children.

In *Jones*, the Supreme court noted "that in 1989 legislation was passed which creates a new offense of 'continuous sexual abuse of a child.' " (*People v. Jones, supra*, 51 Cal.3d at p. 310.) Defendant has not suggested any constitutional impairment unique to the prosecution of sexual child abuse to justify disparate treatment from the prosecution of the broader category of child abuse. We believe the problems of proving specific occurrences of abuse of children, whether sexual or not, are nearly identical. The Legislature has the prerogative to proscribe a course of conduct, rather than specific acts, a prerogative exercised by adoption of Penal Code section 288.5.

Moreover, Penal Code section 288.5 is a well designed accommodation of competing interests: the protection of child victims from molestation and the accused's right to a unanimous verdict. Justice Mosk pointed to several safeguards the Legislature incorporated into section 288.5 to assure a balancing of "the state's compelling interest in prosecuting the resident child molester with the protection of a criminal defendant's rights. Primary among these safeguards is the limitation that the defendant be charged with only one count per victim. Although penalties for violation of section 288.5 are severe—with possible 6-, 12-, or 16-year sentences—the one-count-per-victim provision is a significant restriction on overzealous prosecutors, who may be tempted to compile a multitude of convictions based on potentially exaggerated estimates of the frequency of the criminal conduct by victims concededly unable to recall specifics.

"Section 288.5 would also require that jurors agree the defendant committed *at least three acts* of sexual abuse before convicting him on a given count. The three-act requirement thus sets a baseline for the crime of continuing sexual abuse, making clear that a defendant may not be convicted

of that crime without substantial evidence that he engaged in a repetitive pattern of abusive acts.

"Finally, section 288.5 requires that the defendant have had three months' continuous access to the victim. The continuous-access requirement makes clear that the statute was targeted at the resident child abuse situation, where problems with generic testimony are most likely to arise, and was not to be used against individuals who have only transient contact with the alleged victim." (*People* v. *Jones, supra,* 51 Cal.3d at p. 329 (Mosk, J., dis.).)

Somewhat ironically, defendant launches his constitutional attack against one of the very safeguards incorporated for an accused's benefit. Relying on federal precedent, he complains the statute deprives an accused of the constitutional right to a unanimous jury finding on the three required predicate acts of molestation. Since the statute dispenses with a unanimity finding, defendant argues the jurors may disagree on which acts are committed and yet agree to an aggregate number of acts. He insists *U.S.* v. *Echeverri* (3d Cir. 1988) 854 F.2d 638 is controlling. While his argument is alluring at first blush, upon closer examination we do not find it compelling.

In *Echeverri,* the defendant was convicted on five drug-related charges, including one count of operating a continuing criminal enterprise (CCE). The CCE statute provides in relevant part, "a person is engaged in a continuing criminal enterprise if . . . such violation is a part of a continuing series of violations . . . ." (21 U.S.C. § 848(b) [currently codified at 21 U.S.C.A. § 848(c) (Supp. 1989)].) To establish a "series" pursuant to a CCE charge, the government must prove at least three felony violations. (*United States* v. *Young* (2d Cir. 1984) 745 F.2d 733, 747.) The jury was instructed that the continuing series element required them to find three violations of drug laws, but the court refused Echeverri's request to instruct the jurors they were required to unanimously agree on which three acts constituted the continuing series of violations. Finding the case indistinguishable from *U.S.* v. *Beros* (3d Cir. 1987) 833 F.2d 455, the circuit court found the failure to instruct on unanimity reversible error.

We disagree that the criminal conduct in *Echeverri* is indistinguishable from *Beros.* In *Beros,* an officer of the Teamsters Pension Fund was indicted on several counts of " 'embezzling, stealing, abstracting or converting to his own use' funds of the Teamsters Joint Council 40 and of the Pension Fund, in violation of 29 U.S.C. § 501(c) (1982) and 18 U.S.C. § 664 (1982)." (833 F.2d at p. 457.) The evidence in support of one of the counts showed that "Beros and his wife had traveled to Florida, ostensibly to attend a union conference. In connection with the trip, he (1) used a Joint Council credit

card to pay airfare for himself and his wife; (2) occupied a hotel suite that cost $160 per day, rather than a single or double room which would have cost no more than $60 per day; and (3) remained in Florida for personal reasons after the conclusion of the conference, but continued to expend union funds." (*Id.* at p. 458.) Another count made similar allegations including a variety of acts, any one of which would have constituted a violation of the statute. The circuit court reached the unremarkable conclusion that a unanimity instruction was imperative because any of the various acts might have provided the basis for a guilty verdict; the jurors were required to unanimously agree on the predicate acts. But *Beros does not* involve a continuing-course-of-conduct statute and, consequently, it simply reiterates well accepted propositions involving unanimity when the evidence shows multiple acts, and the defendant is accused of a specific act crime.

The court in *Echeverri* does not discuss, or even mention, the continuous-course-of-conduct exception to the unanimity requirement. Rather, the court focused on earlier cases which engrafted the predicate finding of three separate violations, and applying the basic principles underlying the unanimity requirement, decided the jury was required to unanimously agree on which three violations constituted a series, and therefore, a criminal enterprise. The court failed to discuss whether Congress intended to proscribe a course of conduct, rather than specific acts.

We need not probe the legislative intent behind the federal statute, a task inappropriate in this forum. Although on its face the CCE statute appears to proscribe a course of conduct, it is not our province to investigate congressional intent. Rather, we reject defendant's argument that *Echeverri*, predicated on a federal statute, is dispositive here. *Echeverri* did not address the focal issue of this case: whether the California Legislature defined a course-of-conduct crime which falls within the well recognized exception to the unanimity requirement.

Interestingly, the federal courts consistently have rejected the unanimity argument in a slightly different CCE context. Under the CCE statute, the continuing series of violations must be undertaken "in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management. . . ." In *U.S. v. Jackson* (3d Cir. 1989) 879 F.2d 85, 88, the court held: "As the First and Seventh Circuits explained in *Tarvers* and *Markowski,* the five or more persons requirement of a CCE offense simply defines the size of the enterprise. This establishes that the organization in which the defendant played a leadership role was sufficiently large to warrant the enhanced punishment provided by the CCE statute. . . . While the jury must reach a

consensus on the fact that there were five or more underlings, which is an essential element of the CCE offense, there is no logical reason why there must be unanimity on the identities of these underlings."

The court found the identities of the underlings peripheral to the conduct which the CCE statute is designed to punish and deter. Admittedly, the court did not defect from the *Echeverri* rule of unanimity on the predicate acts. It did, however, focus on the legislative objective to define the size of the enterprise. It deferred to the legislative design requiring the jurors to find the requisite number of underlings without requiring unanimity in their identities.

The same deference is appropriate in this case. Our Legislature has defined a threshold number of acts to constitute "continuous sexual abuse." Clear in its objective to proscribe a course of conduct, rather than a specific act, the Legislature included the three-act finding requirement. Like the size of the CCE enterprise, the number of acts of molestation is an essential element of the crime; unanimity on which acts, like unanimity on which underlings, is not.

A more recent federal case, *U.S.* v. *Horton* (4th Cir. 1990) 921 F.2d 540, 546, provides another apropos analogy. A jury convicted Horton of first degree murder, but did not unanimously agree on whether he was the perpetrator or an aider and abettor. The court held: "If this verdict were held non-unanimous, then the government would seldom be able to convict the perpetrators of group violence of primary criminal conduct short of proving each individual's precise role in the crime. The division of roles may be murky, even where the active participation of group members is clear. By rendering aiders and abettors guilty as principals, 18 U.S.C. § 2 intended to make unnecessary a showing of the defendant's act at the level of particularity that Horton urges." (*Id.* at p. 546.)

Similarly, proof of specific acts of molestation by a resident child molester may be murky, even where evidence of the cumulative conduct is clear. By criminalizing a course of conduct, Penal Code section 288.5 intended to make proof of specific acts unnecessary. The fact that the jurors select different acts to satisfy the numerical threshold for a course of conduct does not render the statute unconstitutional. Rather, it assures the jury must agree there is a course of conduct and prevents conviction based on a single act or a series of acts upon which the jury does not agree.

In essence, defendant urges us to declare Penal Code section 288.5 unconstitutional because the Legislature insisted on proof of a course of

conduct. ██ Child abuse is punishable based on proof of a single incident or a pattern of abuse or neglect. Nevertheless, as a course-of-conduct crime, unanimity is not required. *People* v. *Ewing, supra,* 72 Cal.App.3d 714; *People* v. *Vargas* (1988) 204 Cal.App.3d 1455 [251 Cal.Rptr. 904].) It would be anomalous to find section 288.5 unconstitutional because the Legislature compels a finding of three acts of molestation when prosecution for child abuse, as a course-of-conduct crime without proof of continuous conduct, survives constitutional scrutiny. Defendant, having been charged and convicted of only one count of the continuous sexual abuse of a child rather than the multiple counts available post-*Jones,* is a beneficiary of section 288.5 and an odd champion for its demise.

██ Similarly, in the context of a continuing-course-of-conduct crime, defendant's asserted deprivation of due process is utterly without merit. Here, the prosecution exercised commendable discretion by charging one count of continuous sexual abuse of a child, rather than 30 to 40 counts of molestation under Penal Code section 288 based on the testimony of Russell. The information framed the charges within a specific time frame, from March 1, 1990, to August 17, 1990. The information, coupled with Russell's testimony at the preliminary hearing, more than adequately apprised defendant of the nature of the charges against him. Due process compels nothing more.

II-IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

The judgments are affirmed.

Marler, J.,† and Nicholson, Acting P. J., concurred.

A petition for a rehearing was denied September 28, 1992.

---

*See footnote, *ante,* page 294.

†Retired Associate Justice of the Court of Appeal, Third District, sitting under assignment by the Chairperson of the Judicial Council.